O

# United States District Court
# Central District of California

RUDOLPH BONETATI,

           Plaintiff,

   v.

MARIO MORAN; DOES 1-10, inclusive,

          Defendants.

_____

  MARIO MORAN,

       Counterclaim Plaintiff,

    v.

  RUDOLPH BONETATI; DOES 1-10,

  inclusive,

       Counterclaim Defendants.

Case № 2:14-cv-4287-ODW(PJWx)

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [34] AND GRANTING DEFENDANT'S MOTIONS TO DISQUALIFY COUNSEL [31] [35]**

## I.   INTRODUCTION

The instant action arises from a trademark dispute between Rudolph Bonetati and former friend and business associate Mario Moran.  Bonetati alleges that Moran, after volunteering at his audio services business, stole the business name and independently negotiated contracts to provide the same services to many of the same

1
2
3
4
5

clients.   Moran contends that he is the senior and continuous user of the name, and therefore the rightful owner.   Moran moves to disqualify all attorneys associated with Plaintiff counsel's law firm Bonetati, Kincaid & Soble, Inc.   For the reasons discussed below, the Court **DENIES** Plaintiff's Motion for Summary Judgment (ECF No. 34), and **GRANTS** Defendant's Motions to Disqualify Counsel.[1]  (ECF Nos. 31, 35.)

6

## II.   FACTUAL BACKGROUND

7
8
9
10
11
12
13
14
15
16
17
18
19
20

In the 1980s, Mario Moran operated an audio services business with his brother under the name "AUDIO TRON" (two words).   (SUF ¶ 28.)   In 1984, Moran registered the name but never renewed the registration.   (*Id*. ¶ 31.)   Around 1989, the business dissolved because it was not profitable and Moran's brother had lost interest.   (*Id*. ¶ 29; Opp'n 8.)   From approximately 1989 to 1991, Moran "continued to receive calls from new and former clients and continued to provide services as AUDIO TRON. These services primarily comprised studio recording services for various bands and equipment maintenance services for customers who had previously purchased equipment."   (Opp'n 4.)   By 1991, Moran's close family friend, Rudolph Bonetati, had been operating an audio services business for decades under the name "Menage a Trois."   (SUF ¶ 40.)   Moran suggested that Bonetati change the name of his business to AUDIO TRON since Menage a Trois was not family friendly.   (*Id*. ¶ 39.)

21
22
23
24
25
26

Since 1991, Bonetati has owned AUDIO TRON, an audio services business that provides the installation, operation, maintenance and use of audio and sound system equipment to clients.   (FAC ¶ 9; SUF ¶ 3.)   Services include public announcement and disc jockeying for parades, holiday events, and other major gatherings.   (FAC ¶ 9.) The name AUDIO TRON was most recently registered to Bonetati with the County of

27
28

---

[1] After carefully considering the papers filed in support of and in opposition to the Motions, the Court deems the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.

Los Angeles under Legacy Document No. 20110258645, filed February 16, 2011. (*Id*. ¶ 10, Ex. A.)  Bonetati has provided services for Cinco de Mayo, Fourth of July, and the Long Beach Gay Pride Parade.  (*Id*. ¶ 11.)  According to Bonetati, he has spent substantial sums building the assets and goodwill of his business, which has acquired secondary meaning in the minds of the relevant purchasing public.  (*Id*. ¶ 12.)  AUDIO TRON has achieved a reputation for reliability and quality in the industry.  (*Id*. ¶ 13.)  Therefore, the name is a significant asset.  (*Id*.)

From 1991 to the end of 2011, Moran was involved with AUDIO TRON. However, the parties dispute the extent of Moran's involvement and the reason for his departure.  Bonetati describes Moran as an "independent contractor" who helped out "on a simple volunteer basis."  (SUF ¶ 8.)  Moran describes his time at AUDIO TRON as a "period of cooperation" in which "[b]oth parties' names and telephone numbers appeared on the business cards, both parties' names and telephone numbers appeared on invoices and advertisements, and both parties personally gave clients quotes and negotiated and executed contracts in the name of AUDIO TRON."  (Opp'n 2.)  Bonetati claims that Moran left the business around 2010 after misusing a business credit card for personal expenses.  (FAC ¶¶ 19–21.)  Moran claims that he left because the parties started having issues when "clients suggested that they would prefer to do business directly" with him.  (Opp'n 3.)

After leaving AUDIO TRON, Moran registered the business name "AUDIOTRON" (one word) with the County of Los Angeles under County Document No. 2012008832, filed January 17, 2012.  (FAC ¶ 24.)  Moran continues to do business as AUDIOTRON, providing nearly identical services, in the same market, and for certain former clients.  (*Id*. ¶¶ 26–27.)

On June 4, 2014, Bonetati ("Plaintiff") filed suit.  (ECF No. 1.)  On December 19, 2014, Plaintiff filed a First Amended Complaint.  (ECF No. 24.)  The FAC alleges: (1) Unfair Competition and False Designation of Origin under the Lanham

Act, 15 U.S.C. section 1125(a); (2) Trade Name Infringement under California Common Law; (3) Unfair Competition under California Business and Professions Code section 17200 *et seq.*; (4) Unfair Competition under California Common Law; and (5) Declaratory Relief.  (FAC.)  On December 15, 2014, Defendant filed a Counterclaim seeking damages for: (1) Infringement of Common Law Trademark; (2) Federal Unfair Competition; (3) Common Law Trademark Infringement; (4) Common Law Unfair Competition; and (5) California Unfair Competition.  (Counter Compl.)

On March 23, 2015, Plaintiff filed a Motion for Summary Judgment as to Plaintiff's Complaint and Defendant's Cross-Complaint.  (ECF No. 34.)  On March 9 and 23, 2015, Defendant filed Motions to Disqualify Marilyn L. Bonetati, Matthew A. Arigo and all attorneys associated with Bonetati, Kincaid & Soble, Inc.  (ECF Nos. 31, 35.)  Plaintiff's Motion for Summary Judgment and Defendant's Motions to Disqualify Counsel are before the Court for decision.

### III.    LEGAL STANDARD

#### A.    Motion for Summary Judgment

Summary judgment is appropriate if, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, there are no genuine disputed issues of material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "If the evidence is merely colorable, or is not significantly probative," the Court may grant summary judgment. *Id.* at 249–50 (citation omitted).  At the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559–60 (2006).

The moving party has the burden of demonstrating the absence of genuine issue of fact for trial. *Celotex*, 477 U.S. at 323. To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000) (citation omitted). Once the moving party satisfies its initial burden of production, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact. *Id.* at 1103.

**B.      Motion to Disqualify Counsel**

Motions to disqualify counsel are governed by state law. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) ("By virtue of the district court's local rules, California law controls whether an ethical violation occurred.") The Central District applies the California State Bar Act, the California Rules of Professional Conduct, and related judicial decisions in assessing the standards of professional conduct. *See* C.D. Cal. L.R. 83-3.1.2.

The decision to disqualify counsel is within the trial court's discretion and limited by applicable legal principles. *See Trone v. Smith*, 621 F.2d 994, 999 (9th Cir. 1980); *People ex rel Dep't of Corp. v. SpeeDee Oil*, 20 Cal. 4th 1135, 1143 (1999). Due to the potential for abuse, motions to disqualify are subject to strict judicial scrutiny. *Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985). A court should examine the implications of disqualification, including "a client's right to chosen counsel, an attorney's interest in representing a client, the financial burden on a client to replace disqualified counsel, and the possibility that tactical abuse underlies the disqualification motion." *SpeeDee Oil*, 20 Cal. 4th at 1145.

/ / /

/ / /

## IV.   DISCUSSION

### A.   Plaintiff's Motion for Summary Judgment

Plaintiff moves for summary judgment on the grounds that Defendant abandoned use of the trademark AUDIOTRON (with or without a space) due to approximately 25 years of continuous non-use, starting when Defendant's business with his brother dissolved.  (Mot. 5.)   Plaintiff requests that the Court grant compensation "for lost goodwill and contracts, for an accounting of the monies wrongfully made by Defendant by stolen contracts, and for declaratory relief to settle which party has the right to continue to do business under the AUDIO TRON moniker." (*Id*.)

Defendant concedes that the parties' concurrent use of the trademark "creates a high likelihood of confusion as the services are virtually identical for the purposes of trademark law."  (Opp'n 1.)   However, he contends that he has been using the trademark continuously since going into business with his brother around 1984 and denies that he ever intended to stop using it when the business dissolved or when he became involved with Plaintiff's business.  (*Id*.)   Defendant requests the Court find that he is the senior, continuous user and lawful owner of the trademark, or, in the alternative, that Plaintiff failed to show the absence of genuine dispute as to any material fact.  (*Id*. at 5.)

To show abandonment of a mark by nonuse, the party claiming abandonment must prove the trademark owner's: (1) discontinuance of trademark use *and* (2) intent not to resume such use.  *Grocery Outlet v. Albertson's Inc.*, 497 Fed.3d 949, 951 (9th Cir. 2007) (citing *Electro Source, LLC v. Brandess-Kalt-Aetna Group, Inc.*, 458 Fed 931, 935 (9th Cir. 2006) (citing 15 U.S.C. Section 1127)).   For purposes of assessing abandonment, "use" means "the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in the mark."  *Electro Source, LLC*, 458 Fed at 933.   Three years of nonuse is prima facie evidence of abandonment.  15

1   U.S.C. § 1127.  A concrete "intent to use" is required to rebut a prima face case of

2   abandonment.  *Grocery Outlet Inc. v. Albertsons, Inc.,* C06-02173 JSW, 2008 WL

3   5245962, at *8 (N.D. Cal. Dec. 17, 2008) (quoting *Unuson Corp. v. Built*

4   *Entertainment Group, Inc.,* 2006 WL 194052, at *6 (N.D. Cal. Jan. 23 2006)).

5       "[A]s a threshold matter, abandonment requires complete cessation or

6   discontinuance of trademark use."  *Electro Source, LLC*, 458 F.3d at 938 (citing 15

7   U.S.C. Section 1127).  Even a "single instance of use is sufficient against a claim of

8   abandonment of a mark if such use is made in good faith."  *Wells Fargo & Co. v. ABD*

9   *Ins. & Fin. Servs., Inc.,* 758 F.3d 1069, 1072 (9th Cir. 2014) (quoting *Carter–Wallace,*

10  *Inc. v. Procter & Gamble Co.,* 434 F.2d 794, 804 (9th Cir.1970)).

11      *1.      Post-Dissolution of Business (1989-1991)*

12      Plaintiff concedes that Defendant performed equipment maintenance services—

13  after the business dissolved—for a restaurant called "El Mercadito" that previously

14  purchased equipment from AUDIO TRON.   (Mot. 10)    Nevertheless, Plaintiff

15  concludes that Defendant abandoned the trademark because Defendant was not paid

16  for his equipment maintenance services.

17

18      During Defendant's deposition, he explained that El Mercadito has remained a

19  client for over twenty-five years and that, as part of their arrangement, he "never

20  charge[s] them for services."  (Comp of Exs., Ex. 5, p. 46, line 19 to p. 47 line 22.)

21  He charges them for other work and was last paid in 2014.  (*Id.*)  Plaintiff does not

22  address Defendant's business arrangement with El Mercadito or cite any authority

23  which states that providing *some* free services cannot constitute "use" for purposes of

24  trademark law.  Accordingly, the Court finds no basis upon which to conclude that

25  Defendant discontinued use of the trademark prior to working with Plaintiff.

26      *2.      Working With Plaintiff (1991-2011)*

27      Plaintiff's entire argument that Defendant abandoned the trademark when he

28  suggested that Plaintiff change the name of his business from Menage a Trois to

1
2
3
4

AUDIO TRON rests on the proposition that Defendant was an "independent contractor" who helped out "on a simple volunteer basis." (SUF ¶ 8.) Defendant's Opposition rests on the proposition that he and Plaintiff "conducted themselves as co-owners" and used the trademark in partnership. (Opp'n 4.)

5
6
7
8
9
10
11
12
13
14

While the Court agrees that Plaintiff's assertion that Defendant *volunteered for twenty years* is highly-unbelievable and "attempts to marginalize Defendant's contribution and involvement," at this stage, the Court must decide matters of law, not fact. *Celotex Corp.*, 477 U.S. at 322; *House*, 547 U.S. at 559–60. As demonstrated by the parties' briefing, the nature of the business relationship between Plaintiff and Defendant is very much in dispute, and requires the resolution of numerous genuinely disputed issues of material fact to determine whether Defendant abandoned or continued to use the trademark from 1991 to 2011. Therefore, the Court **DENIES** Plaintiff's Motion for Summary Judgment.

15

**B.     Defendant's Motions to Disqualify Counsel**

16
17
18
19
20
21
22
23

Defendant moves to disqualify the law firm Bonetati, Kincaid & Soble, Inc. ("BKS") "for accepting employment adverse to a former client after receiving confidential information material to such employment." (Mot. 3.) Defendant argues that Marilyn L. Bonetati, a partner at Plaintiff counsel's firm, BKS, directly represented him in litigation involving a real estate transaction and gained access to confidential information.[2] (*Id.*) Defendant requests that the Court disqualify BKS to prevent the confidences he imparted on her from being used against him in the instant action. (*Id.*)

24
25
26
27
28

Plaintiff counsel contends that she never learned any confidential information about Defendant's finances because she only drafted a less-than-two-page letter "commonly sent in real estate scenarios for a failure to disclose a defect in the property." (Opp'n 3.) She also contends that Defendant deliberately delayed moving

---

[2] Plaintiff counsel is Plaintiff's mother-in-law. (*Id.* at 5.)

for disqualification and allowed her firm to incur almost $10,000 in expenses to date. (*Id*.) She requests the Court find that Defendant's arguments are baseless and instruments of pure delay and harassment. (*Id*. at 1.)

"Because [federal courts] apply state law in determining matters of disqualification, we must follow the reasoned view of the state supreme court when it has spoken on the issue." *In re Cnty. of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000). A "[t]rial court's authority to disqualify an attorney derives from the power inherent in every court '[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto.'" *SpeeDee Oil*, 20 Cal. 4th at 1145 (citations omitted).

The rules regarding successive representation of clients with adverse interests focus on an attorney's duty of confidentiality.[3] If an attorney represents a client adverse to a former client without obtaining informed consent, the former client may disqualify the attorney by showing a "substantial relationship" between the subjects of the prior and current representations. *Flatt v. Super. Ct.*, 9 Cal. 4th 275, 283 (1994); *In re Charlisse C.*, 45 Cal. 4th 145, 166 n.11 (2008). This protects the enduring duty to preserve client confidences that survives the termination of the attorney's representation. *City & Cnty. of San Francisco v. Cobra Solutions, Inc.*, 38 Cal. 4th 839, 846 (2006). When a substantial relationship between the representations is established, the attorney is automatically disqualified from the subsequent representation. *Id.* at 847.

In determining whether there is a "substantial relationship," a court should first

---

[3] California Rule of Professional Responsibility 3–310(E) governs successive representation of clients with adverse interests and provides that, "[a] member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment."

1 analyze whether there was a direct relationship with the former client and whether the
2 relationship touched on issues related to the present litigation.  *Id.*; *Advanced*
3 *Messaging Tech., Inc. v. EasyLink*, 913 F. Supp. 2d 900, 907 (C.D. Cal. 2012).  The
4 substantial relationship test requires evidence supporting a rational conclusion that
5 "information material to the evaluation, prosecution, settlement or accomplishment of
6 the former representation given its factual and legal issues is material to the
7 evaluation, prosecution, settlement or accomplishment of the current representation
8 given its factual and legal issues." *Khani v. Ford Motor Co.,* 215 Cal. App. 4th 916,
9 921 (2013) (citations omitted).

10     If the former representation involved a direct relationship with the client—
11 where the lawyer was personally involved in providing legal advice and services to
12 the former client on a legal issue that is closely related to the legal issue in the present
13 representation —the former client need not prove that the attorney possesses actual
14 confidential information; instead, the attorney is presumed to possess confidential
15 information.[4] *Cobra Solutions,* 38 Cal. 4th at 847.  The presumption that an attorney
16 has access to confidential information relevant to the subsequent representation and
17 resulting disqualification extends vicariously to the entire firm.  *In re Charlisse,* 45
18 Cal. 4th at 161; *Flatt,* 9 Cal. 4th at 283.
19

20     In 2005, Marilyn L. Bonetati represented Defendant in a dispute that arose
21 between him and a third party regarding a potential mold problem in a home he had
22 recently purchased.  (Mot. 4.)  Defendant states that he provided Bonetati "with
23 confidential information including but not limited to confidential financial information
24 that is typically associated with the procurement of real estate," and shared "his
25 opinions of litigation and resources available to him for litigation." (*Id.* at 4–5.)
26

27 ─────────
28 [4] When the attorney's contact with the prior client was not direct, then the court examines both the attorney's relationship to the prior client and the relationship between the prior and the present representation. *Cobra Solutions*, 38 Cal. 4th at 847 (citations omitted).

During her representation of Defendant, Bonetati drafted a letter in which she stated "Please consider this a letter of representation of Mario Moran." (Moran Decl., Ex. A.)  Defendant argues that even though an associate at BKS, Matthew A. Arigo, is assigned to handle the instant action, Bonetati is "still with the small firm in a position of authority" and Defendant is unaware "of any attempts made to ethically screen" Bonetati's knowledge of his confidential information from the rest of the firm. (Mot. 5.)

Bonetati states that she had "all but forgotten about" the letter she wrote on Defendant's behalf until it was produced during the course of litigation. (Opp'n 2.) As a long-time real estate lawyer, she claims that "there was no reason to review financial documents" when she represented Defendant. (*Id*. at 3.)  She contends that the prior matter is unrelated to the instant action and that her firm has not found "any record whatsoever of any documents, communications, or information related" to her representation of Defendant. (*Id*.)  She also concludes that Defendant deliberately delayed moving for disqualification because he "was in possession of the basis for his motion since 2005, yet has allowed Plaintiff's Counsel's firm to incur 238.1 hours of attorney time without taking any action on that information, costing Plaintiff $9,628.15 in expenses to date.[5] (*Id*. at 1.)

Bonetati does not dispute that she drafted a letter on Defendant's behalf that expressed his legal concerns regarding a potential mold problem in a home he had recently purchased. (*Id*. at 3.)  The Court is not persuaded that Bonetati drafted this letter without any knowledge of his financial situation.  Furthermore, the Court agrees that knowledge of Plaintiff and Defendant's personal finances during the time they "collected and distributed revenue generated through their [allegedly] collective

---

[5] Like Plaintiff counsel, the Court does not know when Defendant discovered that his former attorney is representing Plaintiff in the instant action.  The Court will not speculate or hold Defendant responsible for counsel's failure to adhere to her professional responsibility and keep track of clients and potential conflicts.

endeavor" is "highly material to adjudicating the instant dispute."   (Mot. 3.) Accordingly, the Court finds that Bonetati was personally involved in providing legal advice and services on a legal issue that is closely related to the legal issue in the present representation.  *Cobra Solutions,* 38 Cal. 4th at 847.  As a result, Defendant need not prove that Bonetati possesses actual confidential information.  *Id*.  She is presumed to possess the confidential information, and the presumption that she has access to confidential information extends vicariously to all of BKS.  *Id*.; *In re Charlisse,* 45 Cal. 4th at 161; *Flatt*, 9 Cal. 4th at 283.  Therefore, the Court **GRANTS** Defendant's Motions to Disqualify Counsel.

## V.    CONCLUSION

For the reasons discussed above, the Court **DENIES** Plaintiff's Motion for Summary Judgment (ECF No. 34), and **GRANTS** Defendant's Motions to Disqualify all attorneys associated with Bonetati, Kincaid & Sobel, Inc. (ECF Nos. 31, 35.)  The parties are hereby **ORDERED** to file a **status report** with the Court no later than **Friday, July 17, 2015**.

**IT IS SO ORDERED.**

June 18, 2015

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**

12